LEE LITIGATION GROUP, PLLC
C.K. Lee (320249)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

DANIELLE SMITH, *on behalf of herself,*
*FLSA Collective Plaintiffs and the Class,*

                    Plaintiff,

          v.

299 N FEDERAL MASTER, LLC,
WHG PAYROLL, LLC,
WURZAK HOTEL GROUP MARK LLC,
and JOHN DOE CORPORATIONS 1-20,

                    Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff DANIELLE SMITH ("Plaintiff") on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants 299 N FEDERAL MASTER, LLC, WHG PAYROLL, LLC, WURZAK HOTEL GROUP MARK LLC, and JOHN DOE CORPORATIONS 1-20 ("Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) illegally retained tips to subsidize the salaries of managers and non-tipped employees, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the Florida Minimum Wage Act, Fla. Stat. § 448.110, the Florida Minimum Wage Amendment, and Art. X § 24 of the Florida Constitution, (collectively the "FMWA") that she and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages due to an invalid tip credit, (2) unpaid wages due to timeshaving, (3) unpaid wages due to rounding, (4) illegally retained tips to subsidize the salaries of managers and non-tipped employees, (5) illegally retained surcharges/gratuities, (6) liquidated damages, and (7) attorneys' fees and costs.

3.      Defendant WURZAK HOTEL GROUP MARK LLC is the parent company of Defendants 299 N FEDERAL MASTER, LLC, WHG PAYROLL, LLC, and JOHN DOE CORPORATIONS 1-20.  Defendant WURZAK HOTEL GROUP MARK LLC, with and through its subsidiaries, owns and manages hotels across the United States, including in Florida, Pennsylvania, and Virginia.  Plaintiff, potential collective members, and putative class members are all current and former employees of Defendant WURZAK HOTEL GROUP MARK LLC, working as both "front of house" tipped employees and "back of house" non-tipped employees for Defendants, and were victims of Defendants' underpayment of wages and retention of tips. Defendants instituted policies affecting Plaintiff and the putative class from its centralized management team located at Defendants shared headquarters, 4200 City Ave, Philadelphia, PA 19131.  This management team set the same tip-pool policies, Event Gratuity policies, improper payroll rounding, and timeshaving policies (e.g. automatic meal break deductions and failure to pay pre-post shift work) for all potential collective and putative class members in their employ.

4.      Plaintiff brings this wage and hour class action on behalf of herself and all persons, who during the applicable limitations period up to and including the present, were similarly underpaid by Defendants in violation of protections afforded under the FLSA, parties' agreements,

and the laws and regulations passed in the States where Defendants operate, including Florida, (as listed above), Pennsylvania (pursuant to the Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.* and 34 Pa. Code § 231), and Virginia (Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*).

5.    Specifically, as to Plaintiff's invalid tip credit allegations, Plaintiff alleges that that Defendants claimed a tip credit from her and putative class members wages in violation of the FLSA and State wage laws due to the following: (1) failing to provide the notice of the tip-credit and/or tip-pool arrangement required under Art. X § 24(b) of the Florida Constitution, 34 Pa. Code § 231, 40.1 VA Code 28.10, and 29 C.F.R. 531.54 to Plaintiff and other similarly situated; (2) requiring the Plaintiff and others similarly situated to perform more than 30 minutes of continuous non-tip producing side work at the reduced tip credit minimum wage rate; (3) requiring that she and other similarly situated to perform non-tip producing side work for more than 20 percent of the workweek at the tip credit minimum wage rate; (4) including non-tipped employees such as managers and back of house employees in the tip pool; and (5) illegally retained mandatory gratuities.

## JURISDICTION AND VENUE

6.    Defendants are subject to personal jurisdiction in this judicial district as Defendants maintain their headquarters at 4200 City Line Ave, Philadelphia, PA 19131.

7.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 as Defendants are headquartered in this District and all events, policies, and procedures giving rise to this Complaint emanated from this District.

### PARTIES

9.      Plaintiff DANIELLE SMITH is a resident of Broward County, Florida.

10.     Defendant 299 N FEDERAL MASTER, LLC ("299 FEDERAL") is a foreign limited liability company formed under the laws of the State of Delaware with a principal address located at 4200 City Ave, Philadelphia, PA 19131.

11.     Defendant WHG PAYROLL, LLC, is a domestic limited liability company formed under the laws of the state of Pennsylvania with a principal address and an address for service of process located at 4200 City Ave, Philadelphia, PA 19131.

12.     Defendant WURZAK HOTEL GROUP MARK LLC ("WURZAK") is a domestic limited liability company formed under the laws of the state of Pennsylvania with a principal address and an address for service of process located at 4200 City Line Ave, Philadelphia, PA 19131.

13.     Defendant JOHN DOE CORPORATIONS 1-20 are subsidiaries of Defendant WURZAK and individual hotels and/or bars or restaurants located throughout the United States, which are operated, with common payroll and wage policies implemented by Defendant WURZAK through Defendant WURZAK's centralized management and payroll department.

14.     Defendant WURZAK, with and through its subsidiaries, collectively own and operate hotels and restaurants, including those named below, as a single integrated enterprise under the various trade names at the following addresses:

    a)  DOUBLETREE DEERFIELD – 100 Fairway Drive, Deerfield Beach, FL 33441;

b) ELEMENT FT. LAUDERDALE – 299 N. Federal Highway, Fort Lauderdale, FL 33301;

c) RENAISSANCE FORT LAUDERDALE MARINA – 1617 SE 17th St. Fort Lauderdale, FL 33316;

d) ROSE'S COFFEE BAR - 299 N. Federal Highway, Fort Lauderdale FL, 33301;

e) SPARROW – 299 N. Federal Highway, Fort Lauderdale FL, 33301;

f) THE DALMAR – 299 N. Federal Highway, Fort Lauderdale FL, 33301;

g) THE MOXY – 1234 Central Ave, St. Petersburg, FL 33705;

h) THE TERRACE GRILL – 299 N. Federal Highway, Fort Lauderdale FL, 33301;

i) ELEMENT VALLEY FORGE – 110 Goddard Blvd, King of Prussia, PA 19406;

j) HILTON PHILADELPHIA CITY AVE – 4200 City Ave, Philadelphia, PA 19131;

k) HOME2SUITES PHILADELPHIA PA CONVENTION CENTER – 1200 Arch St. Philadelphia, PA 19107;

l) HOMEWOOD SUITES PHILADELPHIA CITY AVE – 4200 City Ave, Philadelphia, PA 19131;

m) SHERATON VALLEY FORGE – 480 N Gulph Rd. King of Prussia, PA 19406;

n) SHERATON RESTON HOTEL – 11810 Sunrise Valley Dr., Reston, VA 20191; (collectively, the "Locations" or "Hotels").[1]

15.    The Locations are operated by Defendant WURZAK jointly with the other Defendants and under the theory of a single integrated enterprise. The Locations are commonly owned and managed by the Defendant WURZAK and are advertised on their website: https://www.wurzakhotels.com/our-hotel-management-portfolio. Specifically, the Locations are

---

[1] *See* https://www.wurzakhotels.com/our-hotel-management-portfolio.

engaged in related activities, share common management, common ownership, and common business purpose:

    a.   At all times, Plaintiff's paychecks listed "WHG-The Dalmer" as her employer, despite Plaintiff being employed by the SPARROW.

    b.   Plaintiff, and similarly situated workers, regardless of their Location of work, were instructed to contact Defendants' shared payroll department located at Defendants' shared Headquarters at 4200 City Avenue, Philadelphia PA 19131. For example, employees, no matter the Location or Hotel of their work, were provided the same phone number and contact address for purposes of resolving payroll questions.

    c.   Employees were interchanged on an as needed basis among the Locations. Plaintiff personally observed managers instruct her co-workers to go to other Locations in need of assistance and additional hands.

    d.   The Locations share common ownership and management. As shown on their website: https://www.wurzakhotels.com/meet-the-team.

    e.   The Locations are owned and managed by Defendant WURZAK. The SPARROW's employee handbook shows that the restaurant is managed by General Manager Justin Adams and Restaurant Manager Andres Torrens. Both Justin Adams and Andres Torrens utilize a work email under the domain of thedalmar.com, another Location under Defendants' control. **Exhibit A** – SPARROW EMPLOYEE HANDBOOK, page 3.

f.  Multiple articles noted the common ownership and management of the Locations by Defendant WURZAK. **Exhibit B** – Travel Daily News dated April 25, 2018; **Exhibit C** – Travel Daily News dated April 27, 2018

g.  Defendant WURZAK share common hiring structures as prospective applicant can be hired for the Locations at either jobs@thedalmar.com or https://www.wurzakhotels.com/careers. **Exhibit D** – Screenshot of Dalmar job opening.

h.  At all times, Defendants share a centralized human resource department as Defendant WURZAK has the ability and power to hire on behalf of any of the Locations. Furthermore, the human resource department for SPARROW is intertwined with that of THE DALMAR, as shown by the DALMAR EMPLOYEE HANDBOOK, which all SPARROW employees received. *See* **Exhibit E** – DALMAR EMPLOYEE HANDBOOK.

i.  At all times, Defendants share a centralized human resources department, which manages the Locations.

16.  Although Plaintiff did not work at all other Locations, aside from SPARROW, Defendants are still appropriately named in this Complaint through the theory of a "single integrated enterprise". Not only did the Locations share common ownership, but they also shared interrelation of operations, centralized control of labor relations, and common management as illustrated above. The Locations share numerous commonalities such as purpose that would classify them as a "single integrated enterprise," including but not limited to, identical illegal wage and hour policies and interchangeability of employees. Consequently, all Defendants are properly

named on the basis of their outstanding liability to similarly situated employees for whom Plaintiff

seeks to represent.

17.    At all relevant times, Defendants were and continue to be an "enterprise engaged

in commerce" within the meaning of the FLSA, FMWA, and other state regulations thereunder.

18.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs

and Class Members was directly essential to the business operated by Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.    Plaintiff bring claims for relief as a collective action pursuant to FLSA Section

16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt "front-of-house"

employees (including but not limited to servers, bussers, food runners, bartenders, barbacks,

among others) employed by Defendants on or after the date that is three (3) years before the filing

of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs were tipped

employees who have been similarly situated, have had substantially similar job requirements and

pay provisions, and have been and continue to be subjected to Defendants' decisions, policies,

plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated

in a willful failure and refusal to pay Plaintiff and FLSA Collective: (i) unpaid wages due to

illegally retained tips, (ii) liquidated damages, and (iii) attorneys' fees and costs. Defendants were

not entitled to take any tip credits under the FLSA, which resulted in Defendants compensating

Plaintiff and FLSA Collective Plaintiffs at an improper wage rate, because they failed to satisfy all

statutory requirements for taking a tip credit.

21.    The claims of Plaintiff stated herein are essentially the same as those of FLSA

Collective Plaintiffs.

22.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

### RULE 23 CLASS ALLEGATIONS – MULTI-STATE

23.     Plaintiff bring claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former non-exempt employees (including but not limited to servers, bussers, food runners, bartenders, barbacks, line cooks, cooks, chefs, porters, hosts, among others) employed by Defendants on or after the date that is five (5) years, or the relevant statutory period of each State's labor law, before the filing of the Complaint in this case as defined herein (the "Class Members" or the "Class").

24.     To the extent necessary, Plaintiff will designate subclasses for each of the States where Defendants have employees.

25.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the

calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class also includes a Tipped Sub-Class ("Tipped Sub-Class") of front-of-house employees whose rights were violated due to Defendants' improper tip policies. There is no doubt that there are more than forty (40) members of the Sub-Class. Plaintiff is part of both the Class and Tipped Sub-Class in this matter.

27.    Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices by Defendant, as alleged herein, of (1) unpaid wages due to timeshaving, and (2) unpaid wages due to rounding. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

28.    With regard to Plaintiff and the Tipped Sub-Class, Defendants failed to pay them the proper minimum wage because Defendants were not entitled to claim any tip credit because they failed to meet the statutory requirements under FMWA and applicable state wage laws. Plaintiff and the Tipped Sub-Class suffered from Defendants' failure to pay minimum wage due to Defendants' invalid tip credit allowance because Defendants (i) failing to provide the notice required under State wage laws to Plaintiff and Tipped Sub-Class Members; (ii) impermissibly requiring the Plaintiff and Tipped Sub-Class Members to perform more than 30 minutes of continuous non-tip producing side work at the reduced tip credit minimum wage rate; (iii) impermissibly requiring Plaintiff and Tipped Sub-Class Members perform non-tip producing side work for more than 20 percent of the workweek at the tip credit minimum wage rate; (iv)

impermissibly including non-tipped employees such as managers and back of house employees in the tip pool; and (v) illegally retaining Plaintiff's and Tipped Sub-Class Members' earned gratuities.

29.    Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

31.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual

members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.    Defendant and other employers throughout the state violate the FMWA, and other state laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiff and the Class Members within the meaning of applicable state laws;

b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants, regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c.    Whether Plaintiff and Class Members were properly classified as non-exempt;

d.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

e.    Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

f.    Whether Defendants paid Plaintiff and Class Members the proper wage for all hours worked;

g.    Whether Defendants properly provided notice to Plaintiff and Tipped Sub-Class

Members that Defendants were taking a tip credit;

h. Whether Defendants illegally retained portions of tips earned by Plaintiff and Tipped Sub-Class Members;

i. Whether Defendants mandated an unlawful tip-pooling scheme whereby Plaintiff and the Tipped Sub-Class Members were required to share tips earned with managers, supervisors and other non-tipped employees;

j. Whether Defendants accurately tracked the amount of tips earned by Plaintiff and Tipped Sub-Class Members each day and maintained records thereof;

k. Whether Defendants required Plaintiff and Tipped Sub-Class Members to engage in non-tipped duties for continuous periods of time exceeding 30 minutes;

l. Whether Defendants required Plaintiff and Tipped Sub-Class Members to engage in non-tipped duties for over 20% of the workweek;

m. Whether Defendants took the proper amount of tip credit allowance from Plaintiff and Tipped Sub-Class Members for each payment period under the Florida Labor Law and other state Labor Laws; and

n. Whether Defendants provided proper tip credit notice, at date of hiring and annually thereafter, to Plaintiff and Tipped Sub-Class Members.

## **STATEMENT OF FACTS**

34. On July 13, 2023, Plaintiff DANIELLE SMITH was hired by Defendant to work as a server for Defendants' SPARROW location, located at 299 N Federal Highway, Fort Lauderdale FL, 33301. Plaintiff worked for Defendants until December 15, 2023.

35. From the beginning of her employment to around September 30, 2023, Plaintiff was compensated by Defendants at the Florida tipped credit wage of seven dollars and ninety-eight cents ($7.98) per hour, plus tips. From October 1, 2023 to the end of her employment, Plaintiff SMITH was compensated by Defendant at the new Florida tipped credit minimum wage of eight dollars and ninety-eight cents ($8.98) per hour. FLSA Collective Plaintiffs and Tipped Sub-Class Members were paid at similar minimum tipped credit wage rates.

36.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Tipped Sub-Class Members hourly wage was reduced by the maximum tip-credit permitted by law.

37.     However, Defendants were not entitled to claim any tip credit allowances from the wages of Plaintiff, FLSA Collective Plaintiffs, and Tipped Sub-Class Members, under the FLSA and State wage laws because Defendants: (i) failed to properly provide tip credit notice at hiring; (ii) claimed tip credits for all hours worked despite having caused tipped employees to engage in non-tipped duties for a continuous period exceeding thirty (30) minutes or more than 20% of the workweek; and (iii) improperly included non-tipped workers such as managers or supervisors in the tip pool.

38.     As a direct result of the invalid tip credit, Plaintiff and Tipped Sub-Class Members were paid below the minimum wage in violation of the FLSA and State wage laws.

39.     Throughout her employment, Plaintiff was scheduled by Defendants to work three (3) days per week, from 3:30 p.m. to 2:00 a.m. from Thursday to Saturday. In total, Plaintiff was scheduled to work thirty-one and a half (31.5) hours on a weekly basis.  Plaintiff, FLSA Collective Plaintiffs, and Class Members would work their schedule, and worked additional time, which went uncompensated.

40.     Despite being scheduled to work from 3:30 p.m. to 2:00 a.m., Plaintiff arrived to work early and/or stayed at work after her shift at least twice a week.  Despite clocking in and out before and after her shift, Plaintiff's time was always rounded to the nearest hour or half hour mark and never to her benefit. Due to this rounding and/or shift pay violation, Plaintiff worked an additional 10 minutes per shift, which went uncompensated.  For Plaintiff, this violation resulted in a failure to pay at least 20 minutes of work per week.  Class Members similarly had their time rounded in this manner.

41.     Throughout her employment, Defendants automatically deducted 30 minutes of compensable time from Plaintiff for meal breaks even though Plaintiff was always required to work through her meal breaks. Defendants did not inform employees that their compensable time were subject to this deduction.  Furthermore, Defendants' managers often required employees to work through their meal breaks. See **Exhibit F** – Representative Example of Automatic Meal Deduction**.** Due to this automatic meal break deduction, Plaintiff worked an additional 30 minutes per shift, which went uncompensated.  For Plaintiff, this violation resulted in a failure to pay for an additional hour-and-one-half of work per week.  Class Members similarly worked through meal breaks but still had 30 minutes automatically deducted.

42.     Immediately prior to leaving Defendants' employ, Plaintiff realized this automatic meal break deduction was occurring. Plaintiff asked her co-workers whether the automatic meal break deductions were happening to them despite them working through lunch. All her co-workers responded affirmatively. Specifically, Plaintiff asked a hostess, who had seniority with the restaurant, whether she knew of the practice and the hostess responded that this practice has been going on since 2019, when SPARROW opened.

43.     Throughout her employment, Plaintiff was routinely required to work at private buyout events that happen between Sunday and Wednesday outside of her normal working hours. During these private buyout events, Defendants have an automatic 24% gratuity added on to consumers' bill and required a guaranteed minimum of twelve thousand dollars ($12,000) to be spent. Despite these enormous gratuities, Plaintiff was rarely compensated for these events and would instead only receive her normal tips as a server for the week.

44.     Specifically, during one buyout event where Plaintiff worked, a senior executive of the Defendants hosted a party at SPARROW. The management handed out drink and food

vouchers to many of the attendees, resulting in Plaintiff being paid for just her base hourly rate and no gratuities were distributed for that event, despite the required $12,000 minimum guarantee and 24% automatic gratuity.

45.    Although Plaintiff and other tipped employees were required to arrive at 3:30 p.m. to work, service would not necessarily start at that time and the first table would often not arrive until 6:30 p.m. During such time, tipped employees would be required to engage in side-work, including vacuuming and sweeping the floor, wash utensils, unstack chairs, setting up tables, and polishing silverware. Additionally, Plaintiff and other tipped employees were required to attend a staff meeting every day at 4:30 p.m. Plaintiff would be required by Defendants to spend at least three (3) hours performing additional non-tipped duties daily. Despite engaged in non-tipped duties for three (3) hours daily, Defendants improperly paid Plaintiff at the tipped credit minimum wage for all her hours.

46.    Plaintiff observed that other tipped employees (including bussers, servers, runners, bartenders, barbacks) were also required to engage in non-tipped related activities for (i) continuous periods of time exceeding 30 minutes. Even though Defendants required tipped employees to engage in non-tipped activities for continuous periods of time exceeding 30 minutes, Defendants improperly claimed tip credit for all hours worked by tipped employees. Therefore, at all times, FLSA Collective Plaintiffs and Tipped Sub-Class Members were improperly paid for all hours worked, due to invalid tip credits.

47.    At all relevant times, Defendants included non-tipped workers such as managers in the tip pool. Plaintiff personally observed that Bar Manager Pete Siewruk was paid out of the tip pool.

48. Plaintiff personally observed that Bar Manager Pete Siewruk did not engage in bartending duties for days in which he was part of the tip-pool and would instead be on his laptop and supervising other bartenders.

49. For example, during pre-dinner meetings, Bar Manager Pete Siewruk would stand on the manager's side of the meeting with other managers such General Manager Justin Adams and Restaurant Manager Andres Torrens.

50. When Plaintiff confronted Bar Manager Pete Siewruk about his inclusion in the tip pool, he responded that "they [Sparrow] can't touch me" and that he is "in with [General Manager] Justin."

51. During the confrontation, Bar Manager Pete Siewruk also confirmed to Plaintiff that he was a salaried employee of Defendants. Bar Manager Pete Siewruk also has a level of authority and was employed in an occupation that rendered him ineligible to receive tips from the tip pool. Furthermore, as discussed above, Manager Pete Siewruk does not regularly work behind the bar and his primary job was to supervise other bartenders.

52. At the relevant times, Defendants employed a tip distribution practice that concealed from Plaintiff and other tipped employees the tips they earned at the end of every shift. Despite Defendants automatically charging a "gratuity fee" to private buyout events and parties of 6 or more customers during normal operating hours. Defendants never made known to Plaintiff or any other similarly situated employees whether the "gratuity fee" was included in the tip pool.

53. Whenever Plaintiff asked Restaurant Manager Andres Torrens about the calculations and distributions of the tip pool. Restaurant Manager Andres Torrens would simply respond with "[y]ou'll just have to trust the process." He provided no further elaboration or paperwork.

54.    Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from the wages of Plaintiff, FLSA Collective Plaintiffs, and Tipped Sub-Class Members, in violation of the FLSA and State wage laws.

55.    Defendants knowingly and willfully operated their business with a policy of illegally retaining tips from Plaintiff, FLSA Collective Plaintiffs, and Tipped Sub-Class Members, in violation of the FLSA, State wage laws.

56.    Defendants knowingly and willfully operated their business with a policy of underpaying Plaintiff and Class Members their proper wages, in violation of the State wage laws.

57.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members, in this litigation and has agreed to pay the firms a reasonable fee for its services if she prevails.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

## 29 U.S.C § 206

58.    Plaintiff realleges and reavers all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

59.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a).

60.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

61.    At all relevant times, Defendants had a gross annual revenue in excess of $500,000.00.

62.    At all relevant times, Defendants had a policy and practice of illegally retaining tips from the Plaintiff and FLSA Collective Plaintiffs.

63.    At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them proper wages in the lawful amount for all hours worked and unlawfully retaining their tips.

64.    Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

65.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

66.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

67.    Due to the intentional, willful, and unlawful acts of the Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages and an equal amount as liquidated damages.

68.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

**COUNT II**

**VIOLATION OF THE FLORIDA MINIMUM WAGE ACT AND AMENDMENT**

**ON BEHALF OF PLAINTIFF AND FLORIDA CLASS MEMBERS**

69.     Plaintiff realleges and reavers all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

70.     At all relevant times, Plaintiff and Florida Class Members were employed by Defendants within the meaning of Fla. Stat. §§ 448.101(2), *et seq.* and the Florida Constitution.

71.     "In Florida, the FMWA expressly adopts the statutory and regulatory provisions of the FLSA." *Kubiak v. S.W. Cowboy, Inc.*, 12-cv-1306, 2014 U.S. Dist. LEXIS 80225, at *4 (M.D. Fla. June 12, 2014).  The Florida Constitution, Article X, Section 24(c) allows an employer to take a "tip credit" against tipped employees' wages only if it meets all the eligibility requirements for taking the tip credit under the FLSA. Article X, Section 24(f) of the Florida Constitution further provides that "case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations."

72.     "When an employer violates the minimum wage and overtime provisions of the FLSA and FMWA, the employee is entitled to liquidated damages equal to the amount of unpaid compensation, unless the employer establishes that it acted in good faith and had reasonable grounds to believe that its actions did not violate the FLSA." *Villarino v. Pacesetter Pers. Serv., Inc.*, 2022 U.S. Dist. LEXIS 234108, *59 (S.D. Fla. Dec. 1, 2022).

73.     At all relevant times, Plaintiff and Florida Tipped Sub-Class Members were owed unpaid wages due to Defendants' illegal tip retention policies and practices.

74.     At all relevant times, Plaintiff and Florida Tipped Sub-Class Members were owed unpaid minimum wages to Defendants' invalid deduction of tip credits.

75.     At all relevant times, Plaintiff and Florida Class Members were owed unpaid wages due to Defendants' illegal time shaving policies and practices.

76.     At all relevant times, Plaintiff and Florida Class Members were owed unpaid wages due to Defendants' improper rounding policies and practices.

77.     Plaintiff and Florida Class Members were owed substantial unpaid wages when they left Defendants' employ, putting Defendants in violation of the Act.

78.     Plaintiff has satisfied 448.110(6)'s pre-suit requirements set forth in the statute.

79.     On March 15, 2024, Plaintiff sent a letter to Defendants WURZAK and 299 N. FEDERAL MASTER, LLC, notifying them in writing of the violations and her intention to bring claims for minimum wage violations on behalf of herself and others similarly situated more than 15-days prior to filing this action.

80.     On April 26, 2024, Plaintiff sent a letter to Defendant WHG PAYROLL, notifying them in writing of the violations and her intention to bring claims for minimum wage violations on behalf of herself and others similarly situated more than 15-days prior to filing this action.

## COUNT III

## VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

81.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

82.     At all relevant times, Class Members were employed by Defendants within the meaning of the applicable state wage and hour laws.

83.     Defendants knowingly and willfully violated Tipped Sub-Class Members' rights by failing to pay them the proper compensation due to illegal tip retention policies and practice in violation of applicable state laws.

84.     Defendants knowingly and willfully violated Tipped Sub-Class Members' rights by failing to pay them the proper compensation at rates of not less their state laws minimum wage due to an invalid tip-credit.

85.     Defendants knowingly and willfully violated Class Members' rights by failing to pay them the proper compensation due to an impermissible policy of rounding in violation of applicable state laws.

86.     Defendants knowingly and willfully violated Class Members' rights by failing to pay them the proper compensation due to a policy and practice of timeshaving in violation of applicable state laws.

87.     Due to Defendants' state law violations, Class Members are entitled to recover from Defendant their unpaid compensation, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff DANIELLE SMITH, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

    a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and applicable State wage laws;

    b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid minimum wages due to an invalid tip credit, due under applicable State wage laws;

d.  An award of unpaid wages due to Defendants' improper tip retention, due under the FLSA and the applicable State wage laws;

e.  An award of unpaid wages due to Defendants' illegal time shaving and improper rounding policies and practices under applicable State wage laws;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to applicable State wage laws;

h.  An award of prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

i.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiff as Representative of the Class; and

l.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: May 14, 2024                     Respectfully submitted,

                                        LEE LITIGATION GROUP, PLLC

                          By:    */s/ C.K. Lee*

                                 C.K. Lee (320249)
                                 148 West 24th Street, 8th Floor
                                 New York, NY 10011
                                 Tel.: 212-465-1188
                                 Fax: 212-465-1181
                                 *Attorneys for Plaintiff, FLSA Collective Plaintiffs
                                 and the Class*